UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOLLY MAID, INC., STEVE
CHAPUT, KATHY AXCELL,
and BUNBEAR, INC.,

           Plaintiffs,

-vs-

LINDA CARLSON, JERRY CARLSON,
MELCRYS CLEANING SERVICE, INC.
d/b/a/ MEGA MAIDS, and VERIZON
COMMUNICATIONS, INC.,

           Defendants.
_____/

Civil No. 2:08-cv-11736
Hon. John Feikens

## ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

In this case, franchisor Molly Maid, Inc. claims that its former franchisees have wrongfully continued to use Molly Maid's trademarks and a telephone number associated with the Molly Maid franchise after the expiration of a franchise agreement. Molly Maid has moved this Court to grant it a preliminary injunction preventing further violation of their trademark rights and ordering the Defendants to relinquish the telephone number back to Molly Maid. For the reasons set forth below, I GRANT this motion.

### Facts

Plaintiff Molly Maid brings this case against former franchisees Linda and Jerry Carlson, as well as the Carlsons' new business, Melcrys Cleaning Service (together the "Carlson Defendants"), for trademark infringement and breach of contract. Molly Maid franchises

residential cleaning business systems around the country. Linda and Jerry Carlson were franchisees with Molly Maid between 1993 and 2005. At the end of this period, the parties elected not to continue the franchise agreement (the "Agreement") and the Carlsons instead opened a competing cleaning service, Melcrys Cleaning Services, Inc. (doing business as "Mega Maids"). Molly Maid has also added Verizon Communications, Inc. ("Verizon") as a necessary-party defendant so that this Court may provide complete relief. Verizon is the owner of a 714-847-2295 telephone number (the "2995 phone number"), which is at issue in this case. Molly Maid does not bring this motion against Verizon.

As part of the franchise agreement with Molly Maid, the Carlsons agreed that once the Agreement ended they would stop using Molly Maid's trademarks and the telephone numbers previously associated with the Molly Maid trademark. However, Molly Maid claims that the Carlson Defendants have violated these provisions by continuing to use the Molly Maid name in connection with the 2995 phone number, a number which the Carlson Defendants have carried over from their Molly Maid franchise to their operation as Mega Maids. Specifically, Molly Maid claims that the Carlson Defendants have: failed to take sufficient steps to disassociate themselves from the Molly Maid trademark; continued to list the 2995 phone number in telephone directories next to the name Molly Maid; and have improperly attempted to secure the business of people who have called the 2995 number looking for Molly Maid.

The Carlson Defendants counter that Molly Maid consented to a modification of the Agreement whereby they could continue using the 2995 phone number. While the record indicates that there was, at a minimum, some correspondence regarding such a modification, Molly Maid disputes the significance of these discussions. They argue that the modification is

not binding, and even if it were, it would not allow the Carlson Defendants to continue using the Molly Maid name in connection with the 2995 phone number. The Carlson Defendants also argue that they have attempted to disassociate the 2995 number from the Molly Maid mark, but that Verizon has not been cooperative in these efforts.

This Court has already entered two temporary restraining orders—the first dated June 3, 2008, and the second June 17, 2008—barring the Carlson Defendants from holding themselves out as a Molly Maid franchise, otherwise infringing on Molly Maid's trademarks, or using or listing the 2995 phone number.

## Analysis

### A) I Grant Molly Maid's Motion for a Preliminary Injunction

When considering a request for a preliminary injunction to prevent trademark infringement, federal courts consider and balance four factors: (1) whether there is a strong likelihood of success on the merits; (2) whether there will be irreparable harm absent the injunction; (3) the possibility of substantial harm to others; and (4) the public interest. Hamilton's Bogarts, Inc. v. Michigan, 501 F.3d 644, 649 (6th Cir. 2007). These factors weigh in favor of granting Molly Maid's motion for a preliminary injunction.

#### 1) Molly Maid Has Established a Strong Likelihood of Success on the Merits

In considering whether a plaintiff will succeed on a trademark infringement claim under the Lanham Act, 60 Stat. 427, as amended, 15 U.S.C. § 1051 *et seq.*, federal courts concentrate on whether or not the disputed mark is likely to cause confusion among consumers. 15 U.S.C. §1114(1). In KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., the United States Supreme Court made it clear that the plaintiff must carry the burden of showing that this

3

likelihood of confusion exists. 543 U.S. 111, 117-18, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004).

The Court detailed the proper standard for federal trademark infringement claims as follows:

> The holder of a registered mark (incontestable or not) has a civil action against anyone employing an imitation of it in commerce when "such use is likely to cause confusion, or to cause mistake, or to deceive." Although an incontestable registration is "conclusive evidence ... of the registrant's exclusive right to use the ... mark in commerce," the plaintiff's success is still subject to "proof of infringement as defined in section 1114 [of the Lanham Act.]" And that, as just noted, requires a showing that the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question.

Id. (internal citations omitted).

The Sixth Circuit employs an eight-part test to determine whether a likelihood of confusion exists in trademark infringement cases.[1] However, it uses a different standard in the context of a suit against a former franchisee for the continued use of the plaintiff's trademarks. See Two Men And A Truck/Int'l v. Two Men And A Truck, Kalamazoo, 1995 WL 549278, *5 (W.D. Mich. 1995). There is an especially strong need for injunctive relief "when the case involves a former licensee because, after a license has been revoked, there is an increased danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder." Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 25 (2nd Cir. 2004). Because of this increased risk of confusion, "many courts have held that continued trademark use by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement." Merry Maids Ltd. Partnership v. Kamara, 33 F.Supp.2d 443, 445 (D.Md.1998) (quoting Burger King Corp. v.

---

[1] Under this eight-part test, courts consider the (1) strength of plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) intent of the defendant in selecting the mark; and (8) likelihood of expansion of the product line. PACCAR v. Telescan Technologies, 319 F.3d 243, 249-50 (6th Cir. 2003).

4

Mason, 710 F.2d 1480, 1492-93 (11th Cir.1983)). Even if a plaintiff in such situations has to provide some evidence of a likelihood of confusion, "a franchisor seeking injunctive relief against a terminated franchisee has a lesser burden in establishing the likelihood of confusion." Two Men And A Truck/Int'l, 1995 WL 549278, *6.

Molly Maid can show that the Carlson Defendants have continued to use Molly Maid's trademarks after their license to do so under the Agreement ended. Molly Maid's evidentiary burden in showing a likelihood of confusion under these circumstances is light. The Carlson Defendants contend that they are not wrongfully using the trademarks or 2995 phone number. Linda Carlson, in her affidavit, attempts to excuse the Carlson Defendants' actions by stating: (1) that Molly Maid and Mega Maids had agreed near the time of the termination date of the Agreement that Mega Maids would be allowed to continue using the 2995 phone number; and (2) that the continued association between the 2995 phone number and Mega Maids in phonebook listings is due to Verizon's refusal to cooperate with the Carlson Defendants' efforts to correct the errors. Neither of these excuses is persuasive.

The attempted modification to the Agreement that Linda Carlson is referring to is unenforceable. An April 14, 2006, letter from an attorney on behalf of Molly Maid addressed to Linda Carlson does state that "[d]espite the terms of your agreement with our client, Molly Maid allowed you to keep the telephone number 714-847-2995." Also, the affidavit of Robert P. Ufer, an individual involved in managing Molly Maid, indicating that the parties had reached some sort of understanding whereby Mega Maids could continue using the 2995 phone number. This evidence is insufficient because there is no written contract to tell us the terms of this modification. Significantly, any valid contract to modify the Agreement would have to be

5

supported by consideration. Yerkovich v. AAA, 461 Mich. 732, 740-41 (2000). However, the record reveals no evidence that Molly Maid received consideration for allowing the Carlson Defendants to continue using the 2995 phone number. Instead, the evidence indicates that Molly Maid was attempting to use the 2995 phone number as a bargaining chip in unresolved settlement discussions with the Carlson Defendants. A letter dated March 2, 2005, that Ufer wrote to an attorney representing the Carlsons shows that Molly Maid was demanding some consideration in exchange for a right to use the phone number:

> From the outset of our discussions, I told you that we had to have some consideration from Linda if she wanted to retain the use of the Molly Maid phone number. . . . We would prefer an amiable settlement on this matter, but as I indicated to you in the first instance, such a settlement is going to require some consideration from the Carlsons unless they are prepared to turn over the phone number.

Read in the light of all the evidence, the statement that Molly Maid "allowed [the Carlsons] to keep the telephone number" is at most a statement that Molly Maid decided to forego enforcement of transfer provision while the parties engaged in settlement discussions, not an acknowledgment of an enforceable contract modification.

Also, Verizon's role in preventing the Carlson Defendants from disassociating the 2995 number from the Molly Maid mark does not affect the Carlson Defendants' right to the number. No settlement agreement was reached and the Agreement was not modified to grant them the right to the number. To the extent there was an informal, unenforceable agreement, the record clearly indicates that Molly Maid would permit the Carlson Defendants to use the 2995 phone number only if they successfully disassociated that number from the Molly Maid mark. For instance, the April 14, 2006, letter to Linda Carlson states that "[she was] not and [is] not permitted to use the MOLLY MAID trademarks in connection with that telephone number,

which we understand that you are doing. . . ." Molly Maid clearly required more than the Carlson Defendants attempting to disassociate the number from the Molly Maid trademarks; it required that they actually accomplish this disassociation. The fact that the Carlson Defendants have been so ineffective in accomplishing this, coupled with their refusal to allow Molly Maid to aid in the process, only serves as proof that the transfer of the 2995 phone number is necessary to prevent further infringement on Molly Maid's marks.

The evidence is somewhat unclear regarding whether the Carlson Defendants specifically intended to continue using the Molly Maid mark. Linda Carlson states in her affidavit that they had no such intent. However, there is little evidence detailing the efforts the Carlsons have made to disassociate the 2995 number from the Molly Maid name, and the record as a whole indicates that the Carlson Defendants have given much less than their maximum effort to accomplishing this disassociation. The listing of the 2995 phone number under the Molly Maid name has been renewed twice, and even if the Carlsons have not explicitly asked for this renewal, it is difficult to believe that this would have happened in the face of their strenuous objection. Also, the evidence indicates that Mega Maid employees have attempted to secure the business of individuals who call the 2995 phone number asking for Molly Maid; this shows that Mega Maids receives some advantage from this listing over its competitors. As a result, I find that the record indicates that the Carlsons never intended to fully follow through on the required disassociation.

As mentioned above, because this is a case of a former franchisee continuing to use the franchisor's trademarks, Molly Maid only has to carry a reduced burden in showing that the infringement is likely to produce confusion in the minds of consumers. Overall, Molly Maid can show that the Carlson Defendants are wrongfully infringing upon their trademarks, and that this

will cause confusion in the minds of consumers. Molly Maid has submitted evidence proving that the Molly Maid name continues to be linked to the 2995 number in phone listings. Thus, confusion is likely to arise because the Carlson Defendants continue to use the actual Molly Maid mark while providing the same type of services as Molly Maid. Furthermore, Molly Maid has submitted evidence showing that customers calling the 2995 phone number are likely to be confused. The affidavit of Steven Chaput details that individuals calling this number and asking for Molly Maid are not always properly referred to Molly Maid; instead the Mega Maids employee gives the caller the Mega Maids "sales pitch." This evidence is sufficient to show that the association between the Molly Maid name and the 2995 number is likely to confuse consumers about the nature of the relationship between Molly Maid and Mega Maids, or cause them to accidentally reach Mega Maids when they are attempting to reach Molly Maid. This will result in harm to Molly Maid's business and their relationship with their customers.

Therefore, I find that the record indicates that the Carlson Defendants' practice is likely to cause confusion among consumers, and that Molly Maid has shown a strong likelihood of success on its trademark infringement claim.

### 2) Molly Maid Will Be Irreparably Harmed Absent the Injunction

In trademark infringement cases, irreparable harm is presumed where there has been a showing that the plaintiff is likely to succeed on the merits. ePrize, L.L.C. v. Net Prize, Inc., 2006 WL 3690921, *2 (E.D.Mich 2006). As described in the previous subsection, Molly Maid has established a strong likelihood of success on the merits. Thus, irreparable harm is presumed and Molly Maid fulfills the second factor.

### 3) There is Little Evidence of Substantial Harm to Others

The only third parties that may be harmed are Mega Maids' current customers. The customers that currently rely on the 2995 phone number to contact the business may have some trouble reaching Mega Maids once the phone number is transferred. However, this harm is unlikely to be substantial because they will be able to find the company's number in the phonebook. Therefore, I do not find that this factor weighs against granting the preliminary injunction.

### 4) The Public Will Benefit From the Issuance of the Injunction

The public interest will be served by issuing the injunction because it will force the Carlson Defendants to disassociate their business from Molly Maid. This will decrease the amount of confusion resulting from people attempting to reach Molly Maid through the 2995 phone number only to reach Mega Maids. I find that this factor weighs in favor of granting the preliminary injunction.

### The Preliminary Injunction

For the reasons stated above, I GRANT Molly Maid's motion for a preliminary injunction. IT IS ORDERED that, beginning at the date and time of the issuance of this Preliminary Injunction that the Carlson Defendants, along with their officers, agents, servants, employees, and attorneys are enjoined from:

1. Using the names, trade names, trademarks, service marks or logos of Molly Maid, including the Molly Maid mark, the words "Molly Maid," and/or Molly Maid's logo or any confusingly similar marks, logos or designations, in any way in the operation, advertising, or conduct of any business (including but not limited to Melcrys Cleaning

Service, Inc. d/b/a/ Mega Maids) in which they are involved, including but not limited to using the "Molly Maid" name and trademark in any telephone listing or advertisement;

2. Listing or using the telephone number previously used by the Defendants' former Molly Maid franchised business, which is 714-847-2995, or any other phone number listed using the "Molly Maid" name and trademark;

3. Holding themselves out in any way as a franchise of Molly Maid or doing anything which would indicate any relationship with Molly Maid, including but not limited to advertising and/or re-listing phone numbers using the Molly Maid name or mark.

IT IS FURTHER ORDERED that the Carlson Defendants shall immediately take all necessary steps to relinquish and transfer the 714-847-2995 number to Molly Maid. This order does not require any actions of Defendant Verizon Communications, Inc.

IT IS FURTHER ORDERED that Molly Maid is appointed as the Carlson Defendants' attorney-in-fact for the purposes of transferring the 714-847-2995 number, and that Molly Maid has full authority to implement the transfer of this telephone number.

IT IS FURTHER ORDERED pursuant to Federal Rule of Civil Procedure 65(c) that Molly Maid submit security in the amount of $5000, an amount this Court finds appropriate to cover the costs and damages that may be incurred by the Carlson Defendants if they are found to have been wrongly enjoined or restrained.

**IT IS SO ORDERED.**

Date: ___July 1, 2008___              s/John Feikens
                                      United States District Judge


Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on July 1, 2008, by U.S. first class mail or electronic means.

s/Carol Cohron
Case Manager